684 So.2d 466 (1996)
Terry F. HESSICK, etc.
v.
PETRO PUBLICATIONS, INC., et al.
No. 96 CA 0034.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Rehearing Denied January 7, 1997.
*468 Ralph Brewer, Baton Rouge, for Plaintiffs-Appellees Carolyn Leftwich, Diane Carter, Sterling Core.
James McNeill, III, Baton Rouge, for Defendant-Appellant Steve LeBlanc, Petro Publications, Inc.
DeLinda L. Phillips, Dowden, in Pro. Per.
Before LOTTINGER, C.J., and FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
Plaintiff, Terry F. Hessick, brought this action as executor of George Emitte Core Jr.'s estate against defendants, Petro Publications, Inc., DeLinda Phillips and Steve LeBlanc, seeking payment on a contract of sale. The trial court ruled in favor of substituted plaintiffs, Carolyn Leftwich, Diane Carter and Sterling Core.[1] Defendants, Petro Publications and LeBlanc appeal.

FACTS AND PROCEDURE
The contract sued upon purportedly transferred the succession's interest in two businesses, Petro Check News and Petro Check Services, to Petro Publications. The purchase price was guaranteed by Petro Publications' two stockholders, Phillips and LeBlanc. The agreement specified that the sale was "subject to notice requirements and approval of the 19th Judicial District Court." Although defendants assumed control of the businesses, the sale was never approved by the court and the purchase price was never paid.[2]
This suit was filed by Hessick, on behalf of the estate, seeking payment of the purchase price. In defense, LeBlanc filed a peremptory exception raising the objections of no right of action and no cause of action. LeBlanc's exception and subsequent writ application to this court were denied and, following trial on the merits, judgment was entered in favor of substituted plaintiffs. Petro Publications and LeBlanc filed this appeal asserting that the trial court erred in:

*469 (1) finding enforceable an offer to buy succession property when the requirements of law, pertaining to court approval and notice by publication had not been complied with by the succession representative.
(2) finding the guaranty by LeBlanc enforceable.
(3) refusing to allow LeBlanc to testify in his own behalf at trial.
(4) not finding Hessick liable to defendants-appellants for the damages they sustained.
Substituted plaintiffs answered the appeal asserting that the trial judge erred only in failing to impose sanctions against defendants under La.Code Civ. P. art. 863. They also seek an award of damages for frivolous appeal.

ERRORS ONE AND TWO
At trial and on appeal defendants asserted that the contract of sale was unenforceable because court approval had not been obtained as required by La.Code Civ. P. art. 3281.[3] The trial judge concluded that the contract was enforceable and that the issue of court approval had been decided by this court when we denied LeBlanc's writ application. We find error in these conclusions.
In applying for supervisory writs, LeBlanc sought review of the trial court's denial of his exception of no right/no cause of action. After reviewing the trial court's denial of the exception, we concluded that, "[t]he petition states a course of action; the issues raised by relator pertain to the merits of this action." Hessick v. Petro Publications, Inc., 92-1409 (La.App. 1st Cir. 3/1/93).
In passing on an exception of no cause of action, courts consider only the allegations of plaintiff's petition together with accompanying documents which are made a part thereof; no evidence is admissible to support or defeat the exception. All well-pleaded facts in the petition, as well as those appearing in the accompanying documents must be accepted as true. Didier v. Department of State Civil Service, 446 So.2d 886, 887 (La.App. 1st Cir.1984); Gustin v. Shows, 377 So.2d 1325, 1327 (La.App. 1st Cir.1979); Godwin v. East Baton Rouge Parish School Board, 372 So.2d 1060, 1062 (La. App. 1st Cir.), writ denied, 373 So.2d 527 (La.1979).
In this case, the petition states that a contract of sale was entered into between the parties. It describes the terms of payment and alleges that payment has not been made. The petition is completely silent with regard to the issue of court approval. In the absence of allegations of fact, we could not have considered the issue of court approval during our review of the trial court's denial of the exception. Because the issue was not decided by this court, it was not "the law of the case" and was properly before the trial court during the trial on the merits.
Following his conclusion that the issue of court approval was not properly before the trial court, the trial judge added that, "[i]n any event, this court notes that no evidence was introduced [at] the trial of this matter which would indicate that the court approval provision was included within the Contract of Sale for any purpose other than compliance with LSA C.C.P. art 3281 et. seq.... This court would be hard pressed to sanction defendant's attempt to seize upon a provision of the Act of Sale which was included therein for no other purpose than protection of the other contracting party."
In determining whether the contract is enforceable by substituted plaintiffs, we are guided by the Louisiana Supreme Court's decision in Hamilton v. McKee, 371 So.2d *470 1115 (La.1979). The issue therein was the effect of an agreement to buy and sell succession property which was not authorized by the court until after the agreement was made. Id. at 1117. The court concluded that the subsequently approved agreement was not enforceable because the succession representative did not have the power to alienate succession property without first obtaining court authority. Id. at 1119. The court further noted that the contract was not "ratified" by the succession representative upon obtaining the subsequent authority to sell. Id. Based on these conclusions, the court held that the contract was unenforceable. Id. at 1120.
In Hamilton the supreme court discussed, at length, the requirement of court approval for the private sale of succession property:
Act 290 of 1938 permitted for the first time private sales of all kinds of succession property.... The Code of Civil Procedure retained provisions permitting succession representatives ... and tutors of minors ... to sell property under their administration, but only with court authorization.
The reason for the requirement of public sale for property under administration, and for its long life as the only means of disposition of such property, is apparent. Public sale was called a "protective measure" by proponents of the private sale statute ... who argued that "the same protection can be maintained in a private sale"the protection, of course, of public advertisement and court approval before the representative could possess authority to sell. Only such protection could prevent the dreaded maladministrationthe disposition of succession property or minors' property for inadequate consideration.
As early as 1831 a sale of succession property without a court order was held to be a nullity in Elliott v. Labarre, 2 La. 326 (1831). Robert v. Brown, 14 La.Ann. 597 (1859) held the same; the following year Smelser v. Blanchard, 15 La.Ann. 254 (1860) held that an executrix was powerless to ratify, by receipt of the purchase price, a sale, void for want of an order of court, from which the terms of the sale cannot vary. These two cases were cited in the Succession of Landry, 128 La. 333, 54 So. 870 (1911) for the proposition that a sale without an order was an "absolute" nullity, and a sale whose terms varied from the order of court was a sale without an order.
Provisions for the sale of a minor's property by a tutor parallel those relating to succession property, and require an order of court.... It has been frequently held by this court that the alienation of a minor's property without court authorization is a nullity.
Id. at 1116-17. (Footnote omitted). The Hamilton case makes it clear that an agreement to buy and sell succession property, without court approval, is a nullity. The question is whether the nullity is absolute or relative.
An absolutely null contract is one which violates a rule of public order, as when the object of the contract is illicit or immoral. An absolutely null contract may not be confirmed. La. Civ.Code art. 2029. A relatively null contract is one which violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made. A relatively null contract can be confirmed. The relative nullity may only be invoked by those persons whose interest the ground for nullity was established. La. Civ. Code art. 2031.
By discussing the issue of ratification in Hamilton, the supreme court indicated that a contract to buy and sell succession property, without court approval, is relatively null. In Hamilton, the plaintiff argued that the unauthorized contract was ratified by the succession representative when she obtained the subsequent court authority to sell. Id. at 1119. The court stated that, "[r]atification was not in her power. Only the heirs, the owners, could ratify her unauthorized agreement, if it can be called that, to sell the land of another." Id.
The requirement of court approval for the sale of succession property protects the interest of the heirs/owners of succession property by preventing the sale of succession *471 property for inadequate consideration. Hamilton, 371 So.2d at 1116. When a succession representative ignores this requirement and sells succession property without court approval, the contract is null. Id. Only the heirs/owners of the succession property have the power to ratify the succession representative's unauthorized agreement.[4]Id. at 1119.
Relying on the supreme court's decision in Hamilton, we now hold that a contract of sale of succession property without court approval is a relatively null contract which may be ratified by the heirs/owners of the succession property.
In this case, the contract of sale, which purportedly transferred the businesses from the Succession of George Emitte Core, Jr. without prior court approval, is relatively null. As co-trustees of the testamentary trust which possesses and controls all of the property of the estate, the substituted plaintiffs have the power to ratify the contract.[5] Tacit ratification occurred when the co-trustees were substituted as plaintiffs in this suit. See La. Civ.Code art. 1843. Because the contract was ratified, it is enforceable against defendants.

ERROR THREE
Defendants assert that the trial judge erred in failing to allow LeBlanc, an attorney in this case, to testify at trial. Because, this assignment of error was not briefed, it is considered abandoned. Uniform Rules-Court of Appeal 2-12.4.

ERROR FOUR
Finally, defendants assert that the trial judge erred in failing to hold Hessick liable to defendants for damages they sustained as a result of Hessick's failure to obtain court approval. In brief, defendants contend that LeBlanc's testimony would have supported this claim. However, even considering LeBlanc's proffered testimony, defendants failed to provide sufficient proof of the damages they sustained as a result of Hessick's failure to obtain court approval.
Defendants contended that the businesses were not profitable when they assumed control in 1986. Phillips testified that she expended personal funds running the businesses and that the ventures never became profitable. Neither Phillips nor LeBlanc indicated the amount of money they spent running the businesses. Phillips testified that the businesses had "gone under" while under their control.
Defendants suffered no damages as a result of Hessick's failure to obtain court approval for the sale. Defendants purchased ailing businesses in 1986 which eventually collapsed while under their control. Any losses which they sustained were not a result of Hessick's failure to obtain court approval, but were a result of their own business decisions.
This assignment of error is without merit.

SANCTIONS
Substituted plaintiffs assert that the trial judge erred in failing to impose sanctions against defendants under La.Code Civ. P. art. 863. This article grants the court the authority to sanction parties who file pleadings not well grounded in fact or law. A trial court's determination of whether to impose sanctions will not be reversed unless it is manifestly erroneous or clearly wrong. Penton v. Clarkson, 93-0657 (La.App. 1st Cir. 3/11/94); 633 So.2d 918, 925. We have thoroughly reviewed the record in this case and cannot say that the trial judge was manifestly *472 erroneous in denying substituted plaintiffs' claim for sanctions.
Substituted plaintiffs also seek damages for frivolous appeal under La.Code Civ. P. art. 2164. Damages for frivolous appeal will not be awarded unless the appeal was taken solely for the purpose of delay or when the appealing counsel does not seriously believe in the position he advocates. Penton, 633 So.2d at 925. Upon our review of the record, we cannot say that this appeal was taken only for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates. Therefore, damages for frivolous appeal are not warranted.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are assessed against defendants.
AFFIRMED.
NOTES
[1] The three named plaintiffs were substituted following a judgment of possession in In Matter of the Estate of George Emitte Core, Jr., Probate No. 41,131 (1/18/94). The judgment recognized the substituted plaintiffs as co-trustees of the testamentary trust created in the decedent's will for the benefit of his only child Jason Core and placed them in possession and control of all property of the estate.
[2] The contract of sale was executed on March 5, 1986. This suit was filed on November 8, 1991, more than five years after the sale was executed and possession was delivered to defendants.
[3] La.Code Civ. P. art. 3281 provides:

A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement to sell has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
C. The succession representative shall be obligated to file a petition in accordance with Paragraph A of this Article within thirty (30) days of the date of execution of such an agreement to sell.
[4] We note that in Succession of Landry, 128 La. 333, 54 So. 870, 876 (1911), the supreme court, citing Robert v. Brown, 14 La. Ann. 597 (1859), stated that, "[a] sale of succession property, without an order of court, is an absolute nullity."

However, Robert did not specifically hold that such sales are absolutely null. In Robert, the plaintiffs/heirs sought to rescind an unauthorized contract of sale and to restore the property to the succession. Robert, 14 La. Ann. at 597. By restoring the property, the court indicated that the contract was null. However, there was no discussion of whether the nullity was relative or absolute.
[5] The trust instrument is not contained in the record and there is nothing in the record to suggest that the co-trustees are prohibited from selling these assets.