766 So.2d 623 (2000)
SUCCESSION OF Joseph Page BOYTER.
No. 33,749-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
Rehearing Denied September 21, 2000.
*624 Charles W. Strickland, Shreveport, Counsel for Appellant Jerry Wayne Boyter.
Cook, Yancey, King & Galloway by Bernard S. Johnson, Shreveport, Counsel for Appellee James Leslie Boyter.
Shuey, Smith & Reynolds, L.L.C. by John M. Shuey, Jr., Counsel for Intervenor Dunlap and Sons, L.L.P.
Bodenheimer, Jones & Szwak, L.L.P. by James P. Bodenheimer, Counsel for Frances Darlene Boyter Wells and Michael Page Boyter.
Before BROWN, STEWART and GASKINS, JJ.
*625 GASKINS, J.
This appeal in a succession proceeding arises from a judgment which approved a private sale of property after the succession representative had already received the sales proceeds and used them for his own personal benefit. Jerry Wayne Boyter challenges the actions of James Leslie Boyter, his brother and the representative of their father's succession, pertaining to the sale of timber belonging to the estate. Essentially, Jerry contends that James' actions defrauded the estate and that he absconded with the timber sales proceeds. For the reasons set forth below, we reverse the judgment of the trial court.

FACTS
Joseph Page Boyter had four children from his second marriage: James, Frances, Michael, and Jerry.[1] All of them survived Mr. Boyter, who died in January 1997. His will, which was executed in December 1991, left the family home and Mr. Boyter's personal automobile to James. The remainder of Mr. Boyter's property, constituting his residuary estate, was left in equal shares to James and Jerry. James was named executor; Jerry was designated to serve in that capacity if James was unable to do so.
Neither Frances nor Michael was mentioned in Mr. Boyter's will. They successfully challenged their father's will, seeking recognition as forced heirs. See Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122. After declaring Frances and Michael to be forced heirs, the Louisiana Supreme Court remanded the matter back to the trial court for further proceedings.
While the forced heirship issue was being reviewed by higher courts, Jamesas testamentary executorexecuted without court approval three timber deeds in favor of Dunlap and Sons Timber Co. ("Dunlap") in May and June 1998. He received a total of $230,600 for these timber deeds. In May and June 1998, he wrote checks to himself, also without court approval, in the amount of at least $195,197 from the checking account containing the sales proceeds. In June 1998, James and his wife used the funds obtained from Mr. Boyter's succession to purchase real estate for themselves in Bossier Parish for $175,000.
In July 1998, Jerry filed a petition to remove James as executor based, in large part, upon his sale of the timber and his withdrawal of succession funds, both of which actions were taken without court authority.[2]
In October 1998, Dunlap filed a notice of claim against Mr. Boyter's succession. Dunlap asserted that representation had been made to it that Mr. Boyter's succession owned full interest in the timber; however, it complained that no partition had been recorded in the divorce between Mr. Boyter and his second wife. Dunlap requested appropriate action by the succession representative to perfect title in the timber deeds, i.e., recordation of the partition and legal advertising, or reimbursement of the funds paid pursuant to the timber deeds.
In February 1999, James filed a petition for private sale of the timber covered by the Dunlap timber deeds. He conceded that he had executed timber deeds without court authority and received $230,600 in sales proceeds. James asserted that, with Dunlap's contractual obligation to replant the property, the total value of the Dunlap deal was $244,100, and that an appraisal to be submitted with Mr. Boyter's federal estate tax return showed the timber had a value of $241,900.46 at the time of his death. James requested authority from the court to advertise the sale of the succession's interest in the timber to Dunlap *626 and to execute on behalf of the succession new timber deeds in Dunlap's favor upon the same terms as those already executed. He asserted that execution of new timber deeds in Dunlap's favor were in the best interest of the succession in order to avoid legal action by Dunlap against the succession.
In March 1999, Jerry filed an opposition to the petition for private sale.[3] Among other things, he asserted that the appraisal of the timber was either outdated or not submitted; that the timber sales executed by James without court approval were null and void; that James had taken the timber sales proceeds and bought property in his own name; that the proposed sale was a ruse to protect James and would impoverish, not benefit, the succession; and that any claim by Dunlap for return of the sales proceeds was against James.
In response to Jerry's opposition, James admitted that he had taken the succession funds for his own benefit, but he maintained that this only caused him to be indebted to the succession in the amount of $230,600, a sum fully secured by the legacies he was entitled to receive under the terms of his father's will. He also contended that at the time of the timber sales, he was unaware that he needed court authority to execute those documents. James also specified that he was not seeking ratification of the timber deeds entered into without court authority, but was petitioning for permission to enter into new timber deeds with Dunlap.
In July 1999, the trial court found that James was acting in the best interest of the succession and fulfilling his duties as executor when he executed the timber sales. Jerry's opposition was denied. The court thereafter signed an order authorizing the private sale of the property for $230,600, the receipt of which had been acknowledged by the executor.
Jerry Boyter appealed.

LAW
A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act. La. C.C.P. art. 3191.
A succession representative has the duty to deposit succession funds in a succession bank account and is not allowed to withdraw the funds except as permitted by law. Failure to comply with this duty may result in the representative's dismissal from office, a judgment of liability for all special damage suffered, and the rendition of penalties against the succession representative to be paid to the succession. La. C.C.P. art. 3222.
A succession representative cannot by his contracts bind the succession. La. C.C.P. art. 3221, comment (a); Hamilton v. McKee, 371 So.2d 1115 (La.1979); Succession of Rivers, 97-542 (La.App. 3d Cir.10/8/97), 702 So.2d 910, writ denied, 97-2676 (La.1/9/98), 705 So.2d 1108.
A succession representative may sell succession property in order to pay debts and legacies, or for any other purpose, when authorized by the court as provided by law. La. C.C.P. art. 3261. The phrase "for any other purpose" means any other lawful purpose or reason of necessity. It does not give to the executor or administrator carte blanche to sell succession property for any purpose or reason that he may deem sufficient. Succession of Pipitone, 204 La. 391, 15 So.2d 801 (1943).
La. C.C.P. art. 3281 provides:

*627 A. A succession representative who desires to sell succession property at private sale shall file a petition setting forth a description of the property, the price and conditions of and the reasons for the proposed sale. If an agreement to sell has been executed in accordance with Paragraph B of this Article, a copy of such agreement shall be annexed to the petition.
B. A succession representative may execute, without prior court authority, an agreement to sell succession property at private sale, subject to the suspensive condition that the court approve the proposed sale.
C. The succession representative shall be obligated to file a petition in accordance with Paragraph A of this Article within thirty (30) days of the date of execution of such an agreement to sell.
An opposition to a proposed private sale of succession property may be filed only by an heir, legatee, or creditor. La. C.C.P. art. 3283.
In pertinent part, La. C.C.P. art. 3284 states:
A. If no opposition has been filed timely and the court considers the sale to be to the best interests of the succession, the court shall render an order authorizing the sale and shall fix the minimum price to be accepted. The price may be fixed exactly as the appraised value, as a fraction of the appraised value, as more than the appraised value, or as not less than the appraised value of the property. If an agreement to sell has been executed as provided in Article 3281 and the price and conditions fixed by the court are the price and conditions set in the agreement, the order of court authorizing the sale under such agreement shall fulfill the suspensive condition of the agreement, which thereafter shall be enforceable by the parties to the agreement.
B. Nothing contained in this Article shall affect the general duties of a succession representative.
C. An opposition shall be tried as a summary proceeding.
The approval of an application to sell succession property at private sale rests within the sound discretion of the trial court. Succession of Shepherd, 454 So.2d 1265 (La.App. 2d Cir.1984); Succession of Taglialavore, 500 So.2d 393 (La. 1987). There must be good reasons for the sale and it must be in the best interest of the succession. In allowing private sales of succession property, the requirement of court approval was included as a safeguard against the inappropriate disposition of succession property. Succession of Shepherd, supra.

DISCUSSION
Jerry Boyter contends that the trial court erred in several respects. First, he argues, the court erroneously approved a sale from which the succession would effectively receive no compensation. Also, he maintains that the trial court's actions improperly constituted a ratification of a null act by the succession representative. Lastly, he questions the price set by the court. At the outset, we note that the issue on appeal before us is very narrow whether the trial court erred in approving the timber sales.
The succession representative argues that the matter is moot because the timber was cut between the time of the trial court proceedings and the filing of his brief. However, he cites no authority for this statement. We disagree and find that the matter cannot be so easily dismissed.
As to the price, we note that at the hearing on the petition, counsel for Jerry Boyter stated that: "[A]t this time we do not dispute that at the time the timber deed was executed [the price] was a reasonable compensation." Consequently, we find that the issue of price is not before us.
*628 As to the other issues, a brief examination of the relevant jurisprudence is helpful. In support of his arguments, Jerry cites Hamilton v. McKee, supra, in which the supreme court held that a succession representative lacked the power to obligate the succession to sell its property at private sale without first obtaining court authority. In that case, the succession representative and the prospective buyer entered into a contract which was contingent upon court approval being obtained. After court authority was subsequently secured, the buyer sued for specific performance. The trial court rejected the buyer's demands, finding that the representative had no authority to contract without the court's approval and that the subsequently obtained authority did not ratify the agreement, as the court had not been asked to ratify or confirm it. Further, the trial court noted the administratrix did not accept a new offer. The appellate court reversed, finding that the parties had executed an agreement to sell subject to a suspensive condition, i.e., court authorization. The supreme court reversed the court of appeal and reinstated the trial court judgment. It found that the representative had no power to obligate the succession to alienate its property without first obtaining court authority. According to the court, only the heirs the ownerscould ratify the representative's unauthorized agreement to sell. Also, even assuming that the court could ratify the unauthorized agreement to sell, it did not do so because ratification was not even sought. The subsequently obtained authorization, by itself, did not make the prior agreement enforceable.
We note that in 1980, the year after the Hamilton case was rendered, the legislature amended La. C.C.P. art. 3281 to include Sections (B) and (C) to allow a succession representative to execute an agreement to sell succession property at private sale subject to the suspensive condition of court approval.
In Hessick v. Petro Publications, Inc., 96-0034 (La.App. 1st Cir. 11/8/96), 684 So.2d 466, writ denied, 97-0332 (La.3/21/97), 691 So.2d 89, the succession representative sought payment on a contract of sale on succession property which was executed subject to court approval. The sale transferred the succession's interest in two businesses to another company of which the defendants were stockholders. Although control of the businesses was assumed by the defendants, court approval of the sale was never obtained and the purchase price was not paid. Judgment was rendered against the defendants by the trial court. On appeal, the court looked to the supreme court's Hamilton opinion for guidance. It concluded that a contract of sale of succession property made without court authority was a relative nullity which could be ratified by the heirs/owners of the succession property. Since the co-trustees of the decedent's testamentary trust had been substituted as plaintiffs in the suit, the court found tacit ratification. The trial court judgment was affirmed.
In the instant case, James petitioned the court not for ratification, but for permission to enter into new timber deeds. Thus, the trial court was not even asked to ratify the timber sales. The power to ratify the unauthorized salesrelative nullitieslay with the heirs/owners; apparently, James was the only heir/owner with the inclination to ratify.[4] Consequently, ratification is not an issue here.
Ultimately, resolution of this matter depends on whether the sale was in the best interests of the succession. It is to this issue that we now turn.
Under ordinary circumstances, we would perhaps have little difficulty in concluding that the trial court was within its discretion in holding that the timber sales *629 were in the best interests of the succession. Given the debts burdening the succession, it appears that sale of succession property was an eventual necessity.[5] The sales price in the timber deeds was apparently reasonable. However, the misconduct of the succession representative in taking the sales proceeds for his own personal use long before he even applied for court approval is, at best, highly problematic. We must consider whether the succession stood to gain anything from the court approved timber sale under these circumstances. We conclude that it did not. As a direct consequence, we hold that the trial court abused its discretion in finding that the sale was in the succession's best interests.
We are not persuaded by James' argument before the trial court that the timber sales should be approved because failure to do so would cause the succession to become embroiled in litigation with the timber company. The trial court apparently accepted this view as it found the Hamilton case was only valid if "the purchase price was never made." The trial court was impressed with the fact that the price had been paid, the proceeds deposited in the succession account, and indebtedness created. However, if we accept this logic, then all private sales improperly executed by a succession representative should be approved in order to spare the succession itself from the legal repercussions of the representative's imprudent misdeeds. Such an outcome would effectively destroy the protections afforded to the heirs by the articles governing the private sale of succession property. An errant succession representative could force the heirs/owners to bear the consequences of his unauthorized actions by accepting payment under the unauthorized contract, then coming to court, not to seek its authority as a suspensive condition in an agreement to sell, but to present the court with what amounted to a fait accompli which the trial court would feel compelled to approve. As a matter of public policy, this result is untenable. We reiterate that the succession representative who recklessly acts without court authority not the successionis the appropriate party to face the imminent legal consequences arising from his own unauthorized actions. La. C.C.P. art. 3222.
James Boyter acknowledged that his actions indebted him to the succession. He maintained that his debt was amply secured by the inheritance he stood to gain from his father's estate, which has been estimated at about $1 million. However, the supreme court's recognition of his sister and brother as forced heirs and the substantial debts owed by the succession (including estimated inheritance taxes of about $350,000, as well as administrative expenses and attorney fees of at least $75,000) now cast doubt upon that assertion.
We are deeply concerned by the possible ramification of this decision upon the succession. However, given the supreme court's remand in Succession of Boyter, supra, as well as the other pleadings in the record, it appears likely that the litigation in this succession will be ongoing for some period of time. Consequently, our reservations about potentially causing further delays in closing the succession are not a determinative factor.

CONCLUSION
The judgment of the trial court is reversed Costs are assessed against James Leslie Boyter.
REVERSED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing Denied.
NOTES
[1] Mr. Boyter's first wife and the only child from that marriage predeceased him. He and his second wife, Lorene Lawson Boyter, divorced in 1992.
[2] The record before us does not disclose any trial court ruling on this removal petition.
[3] Mr. Boyter's former wife also filed an opposition against the petition for private sale; however, she subsequently withdrew her objection after she and the succession successfully settled the divorce partition matter.
[4] At the time of the hearing on the petition to approve the sales, the Louisiana Supreme Court had granted the writ inbut not yet ruled uponFrances and Michael's challenge to their father's will. Consequently, their counsel appeared at the hearing to inform the court that these potential forced heirs also objected to the sales.
[5] In fact, the record reveals that since judgment allowing the timber sales was rendered, James has found it necessary to petition to sell stocks at private sale and real estate at public sale due to the succession's lack of cash and mounting debts.