### SUCCESSION OF WHITEHEAD.

An administrator will not be liable personally for the costs of a probate sale made at his instance to effect a partition, though subsequently set aside for informalities, where the proceedings to effect it were conducted by counsel, contradictorily with the heirs, and the sale was made under a decree of the court. Having proceeded in good faith, and used the precautions which prudence suggested, the error cannot be imputed to negligence, nor render him personally answerable.

Services rendered by counsel, necessary for the settlement and partition of a succession, enuring to the benefit of all the parties in interest, must be borne by the succession.

Where an administrator, in the exercise of a sound discretion, deems it necessary for the security of the property under his administration that it should be insured, it is his duty to ensure it, and the costs must be borne by the succession.

Where one of several co-proprietors of a lot of ground pays for the whole cost of pavements made on the requirement of the city authorities, and for which the property was bound and the co-proprietor individually liable, having an interest in discharging the debt he will be subrogated to the rights of the paver, and may recover from his co-proprietors their proportions.

APPEAL from the Second District Court of New Orleans, *Canon*, J. *Benjamin* and *Micou*, for the administrator. *Elwyn*, for the appellants. The judgment of the court was pronounced by

KING, J. *Charlotte Whitehead* died leaving as her only heirs three children, to wit, *Ellen C. Whitehead, George Whitehead* and *Harriet Whitehead*, wife of *Phelps*. Her estate consisted chiefly of a house and lot in the city of New Orleans. In 1832, *Ellen C. Whitehead* entered into a contract with *Phelps*, for the construction of a brick kitchen upon the property held by her in common with her co-heirs, and after the completion of the work gave her notes for the price ($2097), secured by a mortgage on the property. *Phelps* transferred these notes, with a subrogation to all his rights, to *T. R. Hyde*, who made ineffectual efforts to collect the debt. The undivided interest of *Ellen* in the succession of her mother was sold to satisfy the claim of a prior mortgage creditor, and purchased by *Maher*, who sold it to *Hyde*. Upon acquiring this interest, *Hyde* caused the administrator who was then acting to be removed, and the administration to be conferred upon himself. He obtained an order for a partition, and a sale as the means of effecting it. At the inventory taken of the property he caused separate appraisements to be made, of the lots with the original building, and of the kitchen which had been erected by *Ellen Whitehead*. The latter was estimated at $1,200. A sale was made of the entire property; but the purchaser refused to comply with the terms of the adjudication, on the ground that no title had been conferred, in consequence of alleged informalities in the proceedings. The objections were held to be valid, and the sale was set aside. A second sale was subsequently made, the proceeds of which compose the entire funds for distribution. The administrator presented an account of his administration, which *Mrs. Phelps* and *George Whitehead* opposed on various grounds, all of which, with one exception, were overruled in the court below; and the opponents have appealed. Those oppositions only will be considered, which have been insisted on in this court.

1. It is contended first, that the expenses incurred in making the first sale should be at the charge of the administrator, who, it is alleged, failed to cause the formalities to be fulfilled requisite for giving validity to the sale. The probate

proceedings were conducted by counsel employed for that purpose, contradic torily with the heirs, and the sale was made under the authority of a decree of the court. The administrator proceeded in good faith, and used the precau tions which prudence suggested to effect a valid sale. The error into which he fell, if indeed it be one, cannot, under these circumstances be imputed to negligence, and render him personally answerable for expenditures incurred. We think that the judge did not err in decreeing these charges to be supported by the succession.

2. The opponents complain that, a credit has been allowed to the administra tor for a larger amount than he paid to the auctioneer as commissions. There was an error in this respect in the judgment as originally rendered, which was corrected by the judge on a motion for a new trial.

3. The fees paid to counsel are opposed, on the ground that they were for services rendered at the request and for the exclusive benefit of the adminis trator. There is no complaint that the sum paid was unreasonable. The record furnishes evidence that the services rendered by the counsel were necessary, for the final settlement and partition of the succession. They con sequently enured to the benefit of all the parties in interest, and must be borne by the succession. *Friend* v. *Graham's administrator*, 10 La. 440.

4. The administrator, who is the owner of the share of *Ellen C. Whitehead*, and of her claim for the price of the kitchen, credits himself in the account rendered with $1,200, the amount of the separate appraisement of that build ing. This item was opposed, on the ground that the opponents have received no benefit from this addition. Two of the witnesses estimate the kitchen at from $500 to $1000. But the appraisers called for the express purpose of fixing its value, estimate it at $1,200. The building contract shows the original cost to have been much greater. At the sale, the lots, with the buildings as they originally stood, produced their separate value, and a further sum equal to the separate appraisement of the kitchen; showing conclusively the additional value which the latter gave to the property. Upon no principle of justice can the opponents claim to enrich themselves by this outlay. The opposition to this item was, in our opinion, properly overruled.

5. The succession is debited with an amount paid for premiums of insurance by the administrator during the years of his administration, and this item is also opposed. We think that it was properly allowed. If the administrator, in the exercise of a sound discretion, deemed this precaution necessary for the securi ty of the property under his administration, it was his duty to cause it to be insured, and the charges for that purpose must be borne by the succession.

6. *Mrs. Phelps* opposes the account on the further ground that, she has not been recognized as a creditor for $397, alleged to have been paid by her for paving. She entered into a contract for the work, in which it was stipulated that, one-third of the price was to be paid by *Ephraim Whitehead*, and the re maining two-thirds were to be paid by herself. There being three heirs she was bound for $199 11. The receipts show that she has paid $316, being an excess of $116 89 over the amount, for which, as one of the co-proprietors, she was liable. But it is contended that she has forfeited her right to claim to be reimbursed this expenditure, because the payment was voluntarily made by her, without calling upon *Hyde*, who was a co-proprietor, for contribution, and because no separate appraisement was made of the lot and banquette, by which an apportionment to her of a share of the proceeds can be made. It is con-.

ceded that the paving was done at the requisition of the city authorities. The work therefore became indispensable, and it is not pretended that the price paid was excessive. Not only were the co-proprietors individually liable for the cost, in proportion to their respective interests, but the property itself was also bound. If the work had not been done by the owners, the city authorities would have caused it to be done at the expense of the proprietors. The property when sold produced a sum more than sufficient to pay all the claims to which it was subject. The question presented is not one of conflicting privileges, nor of improvements made upon the property of another, but merely of the payment of a debt due by another. No separate appraisement, therefore, of the pavement and lot became necessary. The opponent was bound with her co-proprietors for the debt, and had an interest in discharging it. By her payment she became subrogated to the paver's rights, and presents both a legal and an equitable claim to be reimbursed. C. C. art. 2157. The judge, in our opinion, erred in rejecting the whole of her claim, and should have awarded to her the excess which she paid over the amount for which she was liable as an heir.

It is, therefore, ordered, that so much of the judgment of the District Court as dismissed the claim of *Harriet Phelps* for paving, be reversed. It is further ordered that the said, *Harriet Phelps* be placed on the account rendered by *T. R. Hyde*, administrator, as a creditor for the sum of $116 89, to be paid in due course of administration; and that, in other respects, said judgment be affirmed; the appellee paying the costs of this appeal.