## No. 1197.

SUCCESSION OF T. C. WORLEY—OPPOSITION OF LEHMAN, ABRAHAM & CO., TO PROVISIONAL ACCOUNT OF ADMINISTRATOR.

In case a deceased person leaves amongst his assets a plantation on which there is a *growing crop at the time of his death*, his heirs may prosecute the cultivation thereof and incur the necessary expense therefor, as an act of legitimate administration.

Once an administrator is appointed to said succession, he may continue the said planting operations, if conducted with the skill and care of a prudent owner, and the necessary costs of same is a proper charge against the estate and may be paid out of the proceeds of the crop.

If such venture proves successful and a profit is realized, neither an heir nor creditor can take the proceeds of the crop as an asset of the estate, and at the same time reject and disallow the cost and expense of production.

APPEAL from the Sixth District Court, Parish of Morehouse. *Ellis*, J.

---

*Bussey* and *Naff* for the Administrator, Appellee:

When the deceased had planted a crop and was furnishing the laborers, it is not only lawful, but the duty of the administrator to cultivate, gather and market the crop, to create all debts and pay same necessary to accomplishing that end, including purchasing and furnishing goods to the laborers, and it is also his duty to preserve and protect the property at the cost of the estate. 19 Ann. 494; 30 Ann. 133; 22 Ann. 316.

When the father is heir to one-fourth of a son's estate, and is tutor of the other heir, and the estate owes debts and he was helping his son to manage the farm, it is not only lawful, but his duty to preserve the property and see that the crop is worked pending the time that ensues between when he applies to administer and when he is appointed, and if this interval should be prolonged by an opposition, he is justified in going to such expense as may be necessary to protect the property, furnish the laborers and work the

crops, until the opposition can be tried and overruled and the administrator appointed, and the estate must reimburse him in the amounts expended by him before he qualified as administrator, the same as if such expenditures had accrued after his confirmation. 15 Ann. 625; C. C. 2299, 2300.

The administrator can pay debts without an order of court, but in so doing he runs the risk of their being approved by the court as just debts. 33 Ann. 369; 4 Ann. 74; 7 R. 46.

*R. B. Todd, Jr.*, for Opponents and Appellants:

An administrator is required to prove every item of his account under a general opposition; should make strict proof of every item. 29 Ann. 711; 4 Ann. 579; 12 Ann. 537; 18 Ann. 272.

An administrator has no power to create liabilities against estates they represent, change its obligations, or increase its reponsibilities. 8 N. S. 451; 2 La. 185; 1 R. 119; 17 Ann. 17; 21 Ann. 286; 23 Ann. 428; 24 Ann. 83; 39 Ann. 696; Succession of Sparrow.

If it should be necessary to conduct a plantation for the benefit of a succession during the time necessary for settling it up, *special authority* must be obtained from the Court to do so, in order to bind the estate for current expenses. 23 Ann. 428.

An administrator is limited in expenses to the *amount necessary to preserve* the property left in his care.

In order to complete a contract of lease three things must concur, to-wit: The price, the thing and the consent. The price must be certain and determinate, or else there is no lease. Arts. C. C. 2670, 2671 and 2672.

The opinion of the Court was delivered by

WATKINS, J. The succession of T. C. Worley was opened by his death on the 27th of April, 1886, and his property, real and personal, was appraised at about $7000. He died intestate, and his father and one sister were his only heirs, and by operation of law the latter inherited three-fourths and the former one-fourth thereof.

In May following, opponents caused an execution to issue under a judgment they had previously obtained against A. T. Worley, the father, and thereunder to be seized, the undivided one-fourth interest he had inherited in the succession of J. C. Worley, the son, and, at execution sale made in the month of November following, they became the adjudicatees thereof.

During the pendency of these proceedings, A. T. Worley applied for and obtained the appointment of administrator of his son's succession, and he was qualified as such on the 6th of July, 1886. On the 11th of July following he filed a provisional account, which was opposed by the purchasers, and their opposition having been rejected *in toto*, they have appealed.

I.

At the time of his death, T. C. Worley owned and operated a cotton plantation. It had been planted, but the crop was so immature that it was valued in the inventory as worth nothing. There was opposition made to the appointment of A. T. Worley as administrator, and

during the pendency of the opposition the applicant continued to man-
age the plantation and superintend the cultivation of the crops
thereon, and furnished the laborers who were working on the share
system.

After his qualification he continued to buy goods and supplies for
these purposes upon terms of credit and had the same charged to his
account as tutor, notwithstanding they were used on the plantation.
He gathered the crops, and marketed them. He closed the accounts
of laborers by accepting cotton in settlement. He assumed the re-
sponsibility of applying the proceeds of the crop to the satisfaction of
certain privileged and ordinary debts. On his provisional account he
charges himself with the amount of the inventory, the net proceeds of
the cotton crop, $5,661.46, and the proceeds of the sale of corn—the
whole aggregating the sum of $13,524.82.

He credits himself with the value of the real and personal property
on hand, unsold. He shows that he disbursed the proceeds of the crop
in payment of bills for supplies, bagging and ties, shop and freight
bills, and, in fine, bills of every nature applicable to the cultivation of
a cotton crop. He shows that, in addition, he paid individual debts
of the deceased to the amount of $3,931.77.

On this showing it appears that the amount of the debts remaining
unpaid is only $4,045 52, and that, by virtue of the administrator's
planting operations, the condition of the estate has been improved to
the extent of $2,960.31 within less than one year after he had qualified.

The position assumed by the opponent's counsel is that the *status*
of a succession is fixed at the date it is opened, and its liabilities can-
not be augmented afterwards by any act of the representatives of the
deceased.

He then formulates this proposition, viz:

" At the death of T. C. Worley his property was inventoried at
" $7,085.50. The crop of five hundred acres, not inventoried, was
" well worth $5,000.00. Then, according to the inventory on file, and
" a fair estimate of the crop, Worley's succession at the time of his
" death was worth $12,085.50."

With this assumption as the basis of his client's case, he under-
takes to show that all the debts that were contracted by A. T. Worley,
as tutor and administrator, for the account of the succession in the
course of his planting operations in 1886, should be entirely elimi-
nated from the account. The only items of indebtedness which he
intimates a willingness to allow, are the supply account of John
Phelps & Co., of $2,500, and the amount the administrator paid on

the mortgage of Moses Wolf of $793.90. This allowance would result
in a balance of $2,568.42, for which the administrator should account.

The opponents specially resist the allowance of the claims of
Handy, Davenport, Andrews and Miss Alma Worley. The only ob-
jection urged in oral and printed argument against the first three is,
that they were contracted by A. T. Worley, either in his capacity of
tutor or administrator, after the succession of T. C. Worley was
opened, and that he did not have the power or rightful authority to
bind his succession therefor. But the one that is urged against the
claim of Miss Alma Worley is that the deceased was not indebted to
her for rent of the years 1885 and 1886, because there was no contract
of lease during those years; and because the deceased had expended
for her account, in 1884, more than the amount of the rent. There
was nothing due for that year.

## II.

In this controversy, it may be conceded *arguendo*, that Lehman,
Abraham & Co., as the purchasers of the undivided share of A. T.
Worley in the succession of the deceased, occupy identically the same
position that he did as an heir. They purchased *cum onere* and sub-
ject to the payment of his proportion of the debts of the deceased.
When T. C. Worley died, A. T. Worley, his father, was the only living
male heir. He was the only person capable of taking charge of the
plantation and of administering its affairs. The deceased had planted
a crop, and his death occurred in the month of April, that particular
season when it most needed attention and care. His application to
administer was opposed by them, and his qualification was delayed, on
that account, until July. It seems to us needless to cite authority to
demonstrate his right to act in the premises as he did. In our opinion
he would have proven himself a recreant father and heir, and an un-
faithful administrator, if he had not.

It appears to us to be unreasonable and unjust to treat the proceeds
of the crop as an asset of the succession, and, at the same time, to
refuse to allow credit to the administrator for the amounts he expended,
necessarily, in its cultivation and preparation for market. It seems
to us equally unreasonable to treat it as an individual adventure of A.
T. Worley, when it manifestly yielded a large profit for the estate.

Evidently there is involved in these transactions no question of mal-
administration. It is manifestly improper for us to grant opponents'
request, when we take into consideration the fact that they purchased
the interest of A. T. Worley in November, 1886, when the crop was

40

fully matured, and without protest; and considering the further fact, that they were fully advised by the account, of the large profit the venture had yielded, when, in July 1887, they filed their opposition and made pretension to it.

We have no hesitancy in approving the acts of A. T. Worley, tutor and administrator, as legitimate and proper acts of administration. This case is easily distinguishable from that of the Succession of Sparrow, 39 Annual. For in that case, in discussing the identical question under consideration here, we employed this language, viz:

"The rule is not absolutely inflexible to the extent of annulling or defeating a debt incurred by an administrator in meeting the expenses necessary *to save and harvest* a crop already begun, or hanging by the roots *at the date of his appointment.*  *  *  *  *
Miltenberger vs. Elam, 11 Ann. 668; Succession of Decuir, 22 Ann. 372; Miltenberger vs. Taylor, 23 Ann. 189; Carroll vs. Davidson, 23 Ann. 428; Forsheim vs. Holt, 32 Ann. 133." Ibid, p. 702.

This succession occupied just that situation at the date of T. C. Worley's death and that of A. T. Worley's appointment, and that doctrine is strictly applicable to the debts and obligations which A. T. Worley contracted for its account, and disbursed from the proceeds of the crop that was grown and gathered during the ensuing season. They were undoubtedly proper charges against the crop, if not debts of the succession, strictly speaking.

### III.

It appears from the evidence that Miss Alma Worley owned a small plantation of 250 acres, which T. C. Worley cultivated during the years 1884, 1885 and 1886. In 1884 he contracted to pay for her land five dollars per acre; that is $1,250 00 for the whole. During that year he purchased of her $800 worth of corn. This contract of lease was renewed in 1885, and again in 1886, by a verbal agreement, or tacit reconduction.

The following settlement was made of the mutual accounts of the parties, viz:

She charged him with note for corn and rent in 1884....... $2,000 00
Rent of 1885 and 1886.......................... ........... 2,400 00

Total.............................................. $4,400 00
Credit by schooling, clothing and general mainte-
    nance, two and one-third years............. $1,400 00
By possible amount of taxes................... 300 00
By 1,000 barrels of corn received of administrator   500 00 —2,200 00

Balance due........................................ $2,200 00

This statement was accepted by the judge of the vicinage, who knew the witnesses and heard them testify; and our examination of the record justifies the conclusion he reached.

We have no doubt of the fact that opponents' counsel acted in their interest, with the lights he had upon the question involved, and as he would not have done had he been possessed of the facts that were elicited upon the trial.

The administration of the estate has been delayed, and possibly embarrassed by this litigation, but that is a misfortune common to all litigants. This is not a case which would justify us in assessing damages against the opponents for the prosecution of a frivolous appeal.

Judgment affirmed.

Mr. Justice Todd takes no part in this opinion.