(88 South. 687)

No. 23197.

Succession of HUXEN.

(Nov. 4, 1918. On the Merits, May 2, 1921.)

*(Syllabus by the Court.)*

On Motion to Dismiss.

1. Courts ⬡⟼224(1.)—Act providing for transfer of appeals from Courts of Appeal to Supreme Court held valid.

Act No. 19 of 1912, in providing for the transfer of appeals from the Courts of Appeal to the Supreme Court, subject to the authority of the Supreme Court to determine the question of jurisdiction, is repugnant to no provision of the Constitution.

2. Courts ⬡⟼203—Constitutional provision construed.

Articles 98 and 99 of the Constitution create no Courts of Appeal; they merely confer jurisdiction, except as otherwise provided in the Constitution, upon "Courts of Appeal" in which article 84 declares that the judicial power shall be, in part, vested.

3. Courts ⬡⟼487(8)—Appellant's failure to have motion to transfer from Court of Appeal to Supreme Court copied in transcript no ground for dismissal.

Where an appealed case is transferred by order of a Court of Appeal to the Supreme Court, the failure of appellant to have the motion to transfer copied in the transcript furnishes no ground for the dismissal of the appeal as thus lodged in the Supreme Court, nor has the mover a standing to question the jurisdiction of the Supreme Court, though he may call attention, as the court itself may direct its attention, to such a lack of constitutional or legal power as should preclude it from further dealing with the case.

4. Appeal and error ⬡⟼365(1)—When judgment sufficiently identified stated.

Where a motion for an appeal fully identifies the judgment sought to be appealed from, and the order for the appeal, appearing at the foot of the motion, grants the appeal to the mover therein named, the judgment is sufficiently identified in such order.

5. Appeal and error ⬡⟼395—Amount of bond on appeal held not ground for dismissal.

While it has been held that, in case of a judgment for a specific sum of money, obtained by opposition to the final account of the administrator of a succession, a bond for costs, the amount of which is to be fixed by the judge, is sufficient for the purposes of a suspensive appeal, it has not (so far as we are informed) been held that such appeal will be dismissed because the administrator gives a bond for one-half over and above the specific sum for which the judgment is awarded, nor do we see why it should be, where the order of the judge grants the appeal "upon mover furnishing bond with good and solvent surety, according to law," since the order and the law thereby fix the amount. In any event such a case falls under the dominion of Act 112 of 1916, and, in the absence of any attempt on the part of the appellee to have the error in the amount of the bond (if error there be) corrected, the bond as given must stand.

On the Merits.

6. Executors and administrators ⬡⟼93(1)—Succession; administrator cannot create liability against estate by unauthorized contracts.

An administrator cannot create any liability against the estate of which he has the administration by contracts entered into (without authority from the court) in the carrying on of

the business in which the decedent was engaged; and the estate cannot be held liable on such contracts.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Proceedings in the succession of Robert Huxen, deceased. From a judgment maintaining an opposition to the account of the administratrix, she appeals. A motion to dismiss the appeal was overruled, and the judgment annulled.

Prowell & Prowell, of New Orleans, for appellant.

Dart, Kernan & Dart, of New Orleans, for appellee.

## On Motion to Dismiss Appeal.

MONROE, C. J. This case comes up on appeal by the administratrix of the above-entitled succession from a judgment maintaining an opposition to her account, filed by H. T. Cottam & Co., Limited, which judgment recognizes that firm as entitled to be paid the sum of $219 "with preference and priority over others," as balance due, on account for "goods and merchandise" alleged to have been sold to the deceased. The appeal was first taken to the Court of Appeal, parish of Orleans, but appears to have been transferred by order of that tribunal, to this court, upon its appearing that the amount to be distributed, as shown by the inventory of the succession, exceeds $2,000. Opponent moves to dismiss the appeal upon various grounds which will be considered in the order in which they are stated in the motion, to wit:

[1] 1. That the Court of Appeal is without authority to order the transfer for the reason that Act 19 of 1912, which "pretends to confer that power," is "in derogation of the Constitution"; also that, "in providing for the transfer of appeals, (it)" limits the transfer by or to "any of the Courts of Appeal throughout the state." The position

seems, therefore, to be, on the one hand, that the act "pretends" to confer the power in question to the Court of Appeal for the parish of Orleans, and, on the other, that it does not so pretend, but limits the power to the "Courts of Appeal throughout the state," which term, it is said, does not include the Court of Appeal for the parish of Orleans. Thus the statement included in the motion reads:

"Articles 98 and 99 of the Constitution, in creating the Courts of Appeal throughout the state, describe them as the Courts of Appeal, and then, in this connection, describe the Court of Appeal for the parish of Orleans. Throughout these articles, article 100 and subsequent articles of the Constitution, this latter tribunal is thus described. It would therefore appear that Act 19 of 1912, by its failure to describe the Court of Appeal for the parish of Orleans, does not include it, and only applies to the other Courts of Appeal throughout the state."

If the premises stated in the foregoing quotation were well founded, the conclusion drawn therefrom would have a better support; but in that case, the framers of the Constitution of 1898 would appear to have created a Court of Appeal for the parish of Orleans without conferring upon it any jurisdiction ratione materiæ, save of appeals from the "city courts," and the judges who have presided in that tribunal during the past 20 years, the members of this court who have reviewed, and the litigants who have been affected by, their judgments, would find occasion for serious reflection. There are, however, some errors in the statement which make a difference in the result. Articles 98 and 99 create no Courts of Appeal; they merely, "except as otherwise provided" in (the Constitution), confer jurisdiction upon the "Courts of Appeal," in which article 84 declares that the judicial power shall be, in part, vested, and under the title "Courts and Officers of the Parish of Orleans." article 131 et seq. create, and make certain provisions concerning, "a Court of Appeal

for the parish of Orleans," but make no other provisions as to its jurisdiction than that "after August 1, 1900, in addition to those from the parish of Orleans, all appeals within its jurisdiction from the parishes of Jefferson, St. Charles, Plaquemines, and St. Bernard shall be returned to said court," and that "it shall hereafter have appellate jurisdiction from the city courts of New Orleans," etc.

It is said that the General Assembly could not, by Act 19 of 1912, confer upon the Court of Appeal (for the parish of Orleans) a "concurrent jurisdiction over the transfer of causes with the Supreme Court." The answer is that it does not purport to do so; it provides, to the contrary, that, where an appeal is returned to one of those courts, which is properly cognizable in the other, the court to which it is returned shall order its transfer to the court in which the jurisdiction is vested, but that the question of jurisdiction is to be determined in the last resort by the Supreme Court.

[2] 2. The second ground relied on is that the transcript is incomplete, in that there has been omitted a motion filed by the appellee in the Court of Appeal to dismiss the appeal for lack of jurisdiction, as we understand, in that court; and in support of that ground it is said that the appellant then contended that the jurisdiction was vested in the Court of Appeal, and not in the Supreme Court, and that, the Court of Appeal having ordered the transfer of the case instead of dismissing the appeal, appellee, in an application for rehearing, contended that the jurisdiction was vested in that court. The argument seems to be that the appellant is bound by the original contention (in opposition to appellees' motion to dismiss the appeal to the Court of Appeal), but that appellee is not bound by its contention that the Court of Appeal was without jurisdiction; and, though it was successful, and appellant unsuccessful, on

149 LA.—3

that issue, it can now assume the reverse position, but that the mouth of the appellant is closed. We are of opinion that it is rather the other way, and that appellant, having accepted the adverse ruling of the Court of Appeal, as she was obliged to do, is entitled to claim whatever benefit there is to be derived from it, and that appellees, having contended in the Court of Appeal that the appeal should be dismissed or transferred to this court, is not logically in a position to assert the contrary in this court.

The motion filed in the Court of Appeal, however, formed no part of the record, a transcript of which was required for the purpose of the appeal, and, if it had, its absence from the transcript would not authorize the dismissal of the appeal. The party who needs it is at liberty to produce it. Act 229 of 1910, p. 388. The question whether this court is vested with jurisdiction of the appeal is to be determined by the circumstances disclosed by the transcript, rather than by the allegations of the litigants. Wunderlich v. New Orleans R. & L. Co., 143 La. 626, 79 South. 80. It appears from the transcript in this case that the property of the succession was valued on the inventory at $4,578.93, and, as the appellate jurisdiction is governed by the amount to be distributed, we can discover no reason at present why that jurisdiction is not vested in this court.

[3] 3. It is said that the transcript was not filed in this court within a reasonable time. The order transferring the case became final on May 6, 1918, and the transcript was lodged in this court on July 6 following. The General Assembly has seen fit to declare (Act 106 of 1908) that appeals shall be made returnable in all cases, civil and criminal, "in not less than 15 nor more than 60 days," but, as Act 19 of 1912 does not fix the time when the transcript in cases transferred shall be lodged in the court ad quem, the

question which arises in a particular case of that kind is whether the delay has been reasonable or unreasonable, and we do not find in this case that it has been unreasonable.

[4] 4. It is said that the order of appeal fails to identify the judgment appealed from. The motion for the appeal bears the number and title of the succession, fully describes the judgment, and the order is included in, and made part of, the motion, the whole bearing the signature of the judge.

[5] 5. The next ground relied on is that the (amount of the appeal) bond should have been fixed by the judge, and was not so fixed. The judgment recognizes plaintiff as a preferred creditor of the succession for $219, with interest from May 29, 1915, and orders that the administratrix amend her account accordingly. She gave bond for a suspensive appeal in the sum of $400. This court has, no doubt, held that, where in such case an administratrix gives a bond for costs in an amount fixed by the judge, it will suffice for the purposes of the appeal, but it seems safe to say that no case can be found in which the appeal has been dismissed because an administrator gave bond in an amount exceeding by one-half the amount of the judgment, where the judgment was for a specific sum; nor do we see any reason, from any point of view, why such an appeal should be dismissed, since Act 45 of 1890, p. 38, amending and re-enacting article 575 of the Code of Practice, declares that, where the judgment is for a specific sum (and other conditions are complied with), its execution may be stayed, "provided the appellant gives his obligation with good and solvent surety," etc., "in a sum exceeding by one-half the amount for which the judgment was given," and, where, as in this case, the judge orders that the appeal be granted upon the appellant's furnishing bond, with good and solvent surety according to law, he thereby fixes the amount of the bond. If, however, he does not, and there is error in the amount of the bond for that or any other reason, the case falls under the dominion of Act 112 of 1916, and, in the absence of any attempt on the part of the appellee to have the error corrected, the bond, as given, must stand. White v. Maison Blanche Co. et al., 142 La. 265, 76 South. 708.

We therefore conclude that the grounds upon which the motion to dismiss is based are not well taken, and the motion is overruled.

PROVOSTY, J., absent on account of illness, takes no part.

On the Merits—Statement of the Case.

MONROE, C. J. [6] Robert Huxen died in November, 1914, leaving an estate in community which was appraised at $4,578.93, and consisted of real estate, valued at $3,000, dry groceries in store conducted by him, $157.50, fixtures therein, $314.50, and wines, liquors, cigars, cash register, etc., in "cafeteria" conducted by him, $807.18. His widow opened his succession within a few days after his death, and, after due advertisement of her application, was appointed administratrix and qualified as such. A few days later she filed a petition alleging that the succession owed debts and praying for an order for the sale in block of the movable property for their payment, which order was made, and on December 23, 1915, the movables were sold at auction as ordered, and adjudicated, as it appears, to the administratix's sister, Miss Boya, after, which, on December 31, the administratrix was ruled by a creditor to show cause why she should not file an account, and on September 8, 1916, she was served with another rule to the same effect, filed by H. T. Cottam & Co., Limited, claiming to be a creditor of the estate in the sum of $219 with interest, and the account was ordered to be filed, and,

being filed (on November 21, 1916), shows assets as follows:

| | |
|---|---|
| Sale of café | $ 500 00 |
| Sale of furniture and grocery | 710 00 |
| Cash interest on deposit | 116 00 |
| Total | $1,326 00 |

As against which were recognized:

| | |
|---|---|
| Privileged claims, aggregating | $ 675 98 |
| And ordinary claims aggregating | 878 92 |
| Total | $1,554 90 |

The claim of Cottam & Co., Limited, not having been recognized, it opposed the account, upon the ground, among others, that all of the assets had not been accounted for. On the trial of the opposition it was shown and admitted that all of the goods for the price of which opponent is claiming were sold to Miss Boya, but charged, by her direction, to "Est. Robert Huxen."

### Opinion.

Opponent's salesman explains the situation as follows:

"Q. If, then, that is the case [i. e., that nothing was due opponent outside of the bill sued on], Robert Huxen owes you nothing? A. This is the idea: Now, he may have owed us about $3, say, at the time of his death, and Mrs. Huxen would pay about $40 and would buy about $40 of goods. You see, she always paid every two weeks, and would buy some goods; so the money that she paid wouldn't reduce that entirely; but it is evident that the account was paid up before the time of his death."

Other statements make it perfectly clear that all of the items of the bill sued on were sold after the death of Robert Huxen, and that prior to the filing of the opposition opponent had been paid all that Robert Huxen owed it. In the cross-examination of Miss Boya and Mrs. Huxen, counsel for opponent appears to have been endeavoring to show that the movables were adjudicated to Miss Boya at the instance and for the benefit of Mrs. Huxen; and it is possible that they may have so convinced the trial judge, though we express no opinion upon that subject, the indisputable and admitted, fact being that, whether the purchase was made for the one or the other, it was not made under conditions which rendered the estate of Robert Huxen, to which the goods were improperly charged, liable for the price.

It is true that there are cases in which estates under administration have been held liable for expenses incurred by administrators in carrying on, without express authority from the courts, the business in which their decedents had been engaged; and we are referred to Succession of Wederstrandt, 19 La. Ann. 494, Succession of Brown, 27 La. Ann. 328, Succession of Dorville, 30 La. Ann. 133, and Beatty v. Hawkins, 45 La. Ann. 512, 12 South. 887, as instances of that character. But we do not find that these cases establish precedents for holding the succession of Huxen liable in this case. So far as they are applicable, they are merely exceptions which prove the rule referred to in Bank v. Dejean, 12 Rob. 19, as then well established, and which has frequently been recognized and applied since then, that "an administrator cannot create any liability on the estate by his contracts." Livingston v. Gaussen, 21 La. Ann. 286, 99 Am. Dec. 731; Succession of Decuir, 22 La. Ann. 372; Miltenberger v. Taylor, Ex'r, 23 La. Ann. 188; Florsheim Bros. v. Holt, Ex'r, 32 La. Ann. 133; Succession of Sparrow, 39 La. Ann. 702, 2 South. 501; Maxwell-Yerger Co. v. Rogan, 125 La. 1, 51 South. 48.

It is therefore ordered that the judgment appealed from, awarding the opponent H. T. Cottam & Co., Limited, judgment against this succession, be annulled and the demand of the opponent rejected at its cost.

DAWKINS, J., takes no part, not having heard the argument.