371 So.2d 1115 (1979)
Orlando N. HAMILTON, Jr.
v.
Mrs. Evelyn J. McKEE, Administratrix of the Succession of Vera Childress Jackson.
No. 63605.
Supreme Court of Louisiana.
May 21, 1979.
Rehearing Denied June 25, 1979.
Leo A. Miller, Jr., Miller & Schneider, Lake Providence, for defendants-applicants.
*1116 James M. Miller, Hamilton, Carroll & Miller, Oak Grove, for plaintiff-respondent.
DIXON, Justice.
At issue here is whether the succession representative has the power to obligate the succession to sell its land at private sale without having first obtained an order of court granting the authority to the representative. If not, does the subsequently obtained authorization to sell make enforceable the previously unauthorized, unenforceable agreement to sell?
Before 1938 this problem could not have arisen, because succession property could only have been sold at public sale (authorized by the judge and duly advertised). Since 1938 this is only the second time appellate courts have reached the question.[1]
Act 290 of 1938 permitted for the first time private sales of all kinds of succession property. That act became Title 9, §§ 1451-1454 of the Revised Statutes of 1950, and was replaced by C.C.P. 3261-3263, 3281-3285, 4342, 4554. The Code of Civil Procedure retained provisions permitting succession representatives (C.C.P. 3261, 3271, 3281-3284) and tutors of minors (C.C.P. 4301, 4271) to sell property under their administration, but only with court authorization.
The reason for the requirement of public sale for property under administration, and for its long life as the only means of disposition of such property, is apparent. Public sale was called a "protective measure" by proponents of the private sale statute (Sarpy, Proposed Private Sale of Succession Assets, 12 Tul.L.Rev. 412, 413 (1938)) who argued that "the same protection can be maintained in a private sale"the protection, of course, of public advertisement and court approval before the representative could possess the authority to sell. Only such protection could prevent the dreaded maladministrationthe disposition of succession property or minors' property for inadequate consideration.
As early as 1831 a sale of succession property without a court order was held to be a nullity in Elliott v. Labarre, 2 La. 326 (1831). Robert v. Brown, 14 La.Ann. 597 (1859) held the same; the following year Smelser v. Blanchard, 15 La.Ann. 254 (1860) held that an executrix was powerless to ratify, by receipt of the purchase price, a sale, void for want of an order of court, from which the terms of the sale cannot vary. These two cases were cited in the Succession of Landry, 128 La. 333, 54 So. 870 (1911) for the proposition that a sale without an order was an "absolute" nullity, and a sale whose terms varied from the order of court was a sale without an order.
Provisions for the sale of a minor's property by a tutor parallel those relating to succession property, and require an order of court. C.C.P. 4271, 4301, 4341. Cases in this court and the Courts of Appeal involving attacks on the alienation of a minor's property have not been consistent and uniform, and have been affected by an overriding concern for the protection of the minor. E. g. Touchy v. Gulf Land Co., 120 La. 545, 45 So. 434 (1908); see Oppenheim, The Basic Elements of Tutorship in Louisiana, 44 Tul.L.Rev. 452, 495 (1970). It has been frequently held by this court that the alienation *1117 of a minor's property without court authorization is a nullity.[2]
Of course the issue before us is not precisely the effect of a conveyance of succession property without court authority, but the effect of an agreement between the plaintiff and the succession representative, without authority of court, which was later obtained, to buy and sell succession property.[3] Plaintiff demands specific performance *1118 of the contract to sell 160 acres belonging to the succession of Vera Childress Jackson for $64,000.
The district court dismissed plaintiff's suit, holding that there was no contract because the administratrix had no authority to contract without the authority of the court, which she had not obtained; that the court order subsequently obtained did not convert the letter agreement into a valid contract; that the subsequently obtained authority did not ratify or confirm the previously made agreement, the court not having been asked to ratify or confirm it. After having obtained authority to contract, held the trial judge, the administratrix had the power to accept or reject plaintiff's offer; since she never accepted it after obtaining the authority, the succession was never bound.
The trial judge said the offer was a conditional offer to buy, when and if court authority was obtained. The Court of Appeal reversed (Hamilton v. McKee, 363 So.2d 1216 (La.App.1978)), finding that plaintiff and the administratrix executed "an agreement to sell succession property at private sale made subject to the suspensive condition that the court, as required by law, authorize the sale." 363 So.2d at 1219.
The record before us shows the following:
On November 19, 1955 Sam Jackson filed a petition alleging that his mother, Vera Childress Jackson, died November 10, 1955, and asking a notary be appointed to search for a will. A copy of a typewritten will appears next, bearing a stamp of the clerk of court, dated November 23, 1961. The will left the 160 acres to Sam Jackson, and money to Vera's daughters and a grandson.
Next, on April 4, 1973, Evelyn J. McKee prays to be appointed administratrix, alleges that the will filed November 23, 1961 had prescribed, and filed a descriptive list of the property of the succession. Mrs. McKee was duly appointed.
ALWINE L. MULHEARN, ATTORNEY FOR THE SUCCESSION OF VERA CHILDRESS JACKSON s/ Evelyn J. McKee
On June 6, 1973 the administratrix filed a petition for authority to sell the 160 acres to S. T. McKoin, Jr. for cash at $350 an acre. On June 25, 1973 the administratrix petitioned for authority to sell the land to plaintiff, a lawyer in the parish, for $400 an acre. Sam Jackson filed an opposition which was dismissed in a judgment on August 16, 1973, which also authorized the administratrix to sell the property for cash for $400 an acre.
This is the only authorization for the sale of the property in the record; subsequently, five petitions were filed for authority to sell the property, and an opposition was filed to four of these by Sam Jackson. No action has been taken on any of these oppositions, and no subsequent authority obtained for the sale of the property. On July 22, 1974 a second petition for authority was filed, citing plaintiff's $400 an acre offer; a petition of December 16, 1974 requested authority to sell at $425 an acre, citing an offer from Sam Jackson. May 12, 1975, alleging Jackson's refusal, another petition was filed, referring to plaintiff's offer, requesting authority to sell at $400 an acre. Then two petitions alleging offers from Lamar Bush were filed on February 4 and March 9, 1976, requesting authority to sell at $500 an acre. On February 3, 1977 Hamilton filed this suit.
It is the general rule in Louisiana that "`an administrator cannot create any liability on the estate by his contracts.'" Succession of Huxen, 149 La. 61, 70, 88 So. 687, 690 (1921). At 27 Tul.L.Rev. 87 (1952), Powers of a Succession Representative in Louisiana, Slovenko states, page 94:
"The personal representative generally cannot subject the estate to a direct liability to third persons. An `estate' cannot become a party to a contract since it is neither a person nor an artificial legal entity. Personal liability attaches to any contract which the representative makes,
EVELYN J. McKEE, ADMINISTRATRIX OF THE SUCCESSION OF VERA CHILDRESS JACKSON
ONH:jn" *1119 notwithstanding testamentary or court authority. The third party must look to the succession representative personally for claims arising out of contracts which the representative makes, and the representative, in turn, may be reimbursed for a proper expenditure from the assets of the estate upon the settlement of accounts. Since the representative as a prudent administrator is under a duty to preserve succession property, expenditures for the preservation of succession property, such as repairs, insurance and taxes, are proper expenses."
A succession representative is a fiduciary charged with collecting, preserving and managing the property of the succession. C.C.P. 3191. In preserving, he must repair, maintain and protect the succession property, C.C.P. 3221, where the Official Revision Comment explains:
"(a) No change in the law is contemplated. It is the duty of the succession representative to make necessary expenditures for the preservation of succession property, as for instance, repairs, insurance, and taxes. Civil Code Art. 1147; Succession of Rhodes, 164 La. 488, 114 So. 107 (1927). Although a representative cannot by his contracts bind the succession, he is nevertheless entitled to reimbursement for proper expenditures. Succession of Whitehead, 3 La.Ann. 396 (1848); Succession of Nitch, 22 La.Ann. 316 (1870); Succession of Futch, 207 La. 807, 22 So.2d 125 (1945)." (Emphasis added).
During the administration, the succession representative might be required to do those things which only an owner can normally do. He might need to modify or compromise obligations owed to or by the succession (C.C.P. 3198), invest the funds (C.C.P. 3223), operate the business of the decedent (C.C.P. 3224), lease the property (C.C.P. 3226), perform the decedent's executory contracts (C.C.P. 3227), borrow money and mortgage property (C.C.P. 3228), or sell succession property (C.C.P. 3261). In every such case (except for investing succession funds, which requires only court authority) publication or notice and obtaining court authority are required.
Nowhere in the powers given to the succession representative, in alienating the property of the succession, is there a suggestion that the representative has the power to obligate the succession to alienate its property without first obtaining that authority from the court.
Nor has there been, as plaintiff argues in the alternative, a "ratification" by the administratrix by obtaining court authority to sell, and by filing two subsequent petitions (in which she recited plaintiff's offer) to obtain authority to sell the property at $400 an acre. Defendant also filed three petitions for authority to sell at a greater pricethe last two, in which oppositions are pending, seek authority to sell at $500 an acre. Until the higher offers were received, there was no reason defendant could not have accepted plaintiff's offer at any time from August of 1973 until December of 1974. Instead, defendant's actions are not inconsistent with her position that she considered plaintiff's offer a continuing one which she never accepted after having obtained the authority to sell. More to the point, however, until the administratrix obtained that authority, she is more properly considered a third person contracting to sell the property of another. "Ratification" was not in her power. Only the heirs, the owners, could ratify her unauthorized agreement, if it can be called that, to sell the land of another. (See the last sentence of C.C. 1840: "Contracts, however, made in the name of another, under void powers, will be valid, if ratified by the principal before the other contracting party has signified his dissent to the agreement.")
And, finally, assuming that the court could have ratified the unauthorized agreement to sell, it did not. Ratification was neither sought nor given. In its judgment of August 16, 1973, the court merely authorized the administratrix to sell the property at $400 an acre. (See C.C. 2272).
We consider the inconvenience and expense incurred by the requirement of petition, advertisement and order authorizing *1120 the alienation of succession property to have been not lightly imposed by the lawmakers; when they abandoned the safety of the public sale, they relied on the courts to retain the safety derived from the petition, advertisement and order of court.
Therefore, we conclude that a succession representative does not have the power to obligate the succession to sell its property at a private sale without having first obtained the authority from court, following a petition and advertisement as required by statute; and that an authorization to sell, obtained following an agreement to sell, does not, itself, make enforceable the previously unauthorized, unenforceable agreement.
The judgment of the Court of Appeal[4] is reversed, and the judgment of the district court is reinstated, all at plaintiff's cost.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I dissent, agreeing with the court of appeal. Hamilton v, McKee, 363 So.2d 1216 (La.App. 2d Cir. 1978).
NOTES
[1] In Bennett v. Treadway, 134 So.2d 668 (La. App.1961), a seaman offered to purchase property, leaving money and a written offer with his daughter before he left for sea. He did not know that the owner was a succession, whose executor accepted the offer, adding, "`Sale of property subject to Court approval.'" When the seaman returned, he withdrew his offer in writing two weeks before court approval of the sale was obtained. The court did not squarely meet the issue before us, but permitted the seaman to recover his deposit, holding that, since he could not have known of the need for court approval, the acceptance conditioned upon such approval was a conditional acceptance (C.C. 1805) giving the offerer the right to withdraw. The same court in 1962 enforced an agreement to buy and sell, executed by co-owners, one of whom was the tutrix of a minor owner and ordered the forfeiture of the deposit. The court distinguished Bennett v. Treadway, supra, because of the conditional acceptance there, compared with the offer then before it, which contained the condition and was unconditionally accepted. Richmond v. Krushevski, 139 So.2d 290 (La.App.1962), reversed on other grounds, 243 La. 777, 147 So.2d 212 (1962).
[2] Succession of Drysdale, 130 La. 167, 57 So. 789 (1912), held that the sale of minors' share in a succession without court authority was a nullity. In Leadman v. First National Bank, 198 La. 466, 3 So.2d 739 (1941), a bank was required to restore funds of a minor which it knowingly received from the tutrix for the purchase of a note without a court order. Wiley v. Davis, 164 La. 1090, 115 So. 280 (1928), held a lease null as to minor owners because the tutrix had granted the lease without court authority. In White v. Hodges, 201 La. 1, 9 So.2d 433 (1942), the execution by a tutrix without court authority of instruments designed to extend the life of mineral servitudes, against the interest of the minors, was held invalid. Because C.C. 353 and 3072 require court authority before a tutor can make a compromise or transaction of a minor's property, the Court of Appeal upset a release of minors' tort claims made by the tutor without court authority. Blades v. Southern Farm Bureau Casualty Insurance Co., 95 So.2d 209 (La.App.1957), reversed on other grounds (that there was no tutorship, and that the father, having the power of administration while the mother lived, was not required, as the tutor was, to obtain authority of the court to compromise the claims of a minor), 237 La. 1, 110 So.2d 116 (1959). The Blades case cited cases back to 1822, when Chesneau's Heirs v. Sadler, 10 Mart. (O.S.) 726, was decided.
[3] We assume without deciding that the letter agreement would have been an enforceable contract except for the want of court authority for the executrix to act. The letter was dictated by Hamilton at a meeting in his office with the administratrix and her lawyer, and signed as follows:
"June 25, 1973
Mrs. Alwine Mulhearn
Mulhearn and Smith
Attorneys at Law
Tallulah, Louisiana
 Re: Purchase of 160 acres,
 more or less, of the
 Vera Jackson Estate
Dear Mrs. Mulhearn:

This will confirm our agreement and understanding this date, wherein I have offered to pay the sum of $64,000.00 for the following described immovable property situated in the Parish of West Carroll, State of Louisiana, being owned by the Succession of Vera Childress Jackson, now in Probate No. 6647 on the docket of the Fifth Judicial District Court for the Parish of West Carroll, State of Louisiana. This land is described as the Northwest Quarter (NW ¼) of Section Twenty (20) Township Twenty-Two (22) North, Range Eleven (11) East, West Carroll Parish, Louisiana.
The $64,000.00 purchase price on this property shall be paid in cash immediately upon passing of the deed of conveyance in proper form as hereinafter stated. For confirmation of our financial ability to handle this matter, you have our permission to check with the Bank of Oak Grove, Oak Grove, Louisiana, attention Mr. Albert Mizell, Vice-President, or Arden J. Smith, President.
We understand that the heirs of Mrs. Vera Childress Jackson will retain an undivided one-half (½) interest in and to all of the oil, gas and minerals in, on and under subject property.
Due to the conditions as discussed with you, you agreed to furnish me with a policy of owner's title insurance, at the expense of the estate, assuring me of full complete fee simple title to said land free and clear of any and all encumbrances with the exception of road right of ways, drainage right of ways, any other utility rights of way, and any reservations of record in West Carroll Parish. In connection with the last, it is our understanding that a portion of this property was previously deeded to a negro church, which has been abandoned, and we would request that you place in your deed a conveyance to me of any reversion rights that the estate may own.
We understand that all of the above is subject to approval by the Fifth Judicial District Court for the Parish of West Carroll, State of Louisiana, and in the event any heir or creditor should successfully contest this sale, then this agreement shall be null, void and of no force and effect. However, in the event of such a contest, I understand that you will agree to us joining in with your client, Mrs. Evelyn J. McKee, in attempting to secure approval of the sale by Court.
In evidence of this agreement, I have prepared this letter in three (3) counterparts of equal dignity, which will be executed by myself, and accepted by you and Mrs. McKee, Administratrix of the Succession of Mrs. Jackson.
With kindest personal regards, we are
 Very truly yours,
 HAMILTON, CARROLL AND MILLER
 s/ Orlando N. Hamilton, Jr.
 Orlando N. Hamilton, Jr.
The above terms are understood and accepted.
s/ Alwine L. Mulhearn
[4] The Court of Appeal correctly noted that neither in Bornemann v. Richards, 245 La. 851, 161 So.2d 741 (1964) nor in Succession of Hausser, 320 So.2d 614 (La.App.1975), writ denied 323 So.2d 805 (La.1976), did the courts specifically address the issue of the succession representative's power to bind the succession to an agreement to sell before the court authorizes the sale but contingent on court approval. However, in the Succession of Hausser, supra, the succession representative accepted an offer to buy succession immovable property for $100,000 subject to court approval. Approximately two weeks later, another party made an offer to buy the same property for $110,000. The heirs opposed the sale at the first offer and the court in dictum reasoned:

"The executorhimself a real estate broker by professionexpressed concern that he could not consider a later offer after having accepted (subject to court approval) an earlier offer. In our view, that the succession representative had already conditionally accepted the first offer prior to receipt of the second is immaterial. He owes no obligation to the first offeror other than to present the offer to the court, and he owes this obligation only in his capacity of succession representative. The succession representative, unlike a broker, does not become the agent of both seller and buyer, but remains the representative of the succession exclusively, obliged only to the succession, and for the benefit of its creditors, heirs and legatees. `A succession representative is a fiduciary with respect to the succession . . . .,' C.C.P. 3191, who `cannot in his personal capacity or as representative of any other person make any contracts with the succession . . .,' art. 3194 (emphasis added). Thus, even after conditionally accepting an offer, the succession representative cannot have any contractual relationship as the representative of the offeror. If, as in our case, a more advantageous offer is received after a first offer has been conditionally accepted, the succession representative has no obligation to the first offeror to reject the second offer. (One evident alternative, ordinarily, is to accept the second offer on the condition that the court both reject the first and approve the second offer.)" Succession of Hausser, 320 So.2d at 617. (Emphasis added).
This reasoning in Succession of Hausser, supra, is supported by other decisions of this court in which the general rule has been that "`an administrator cannot create any liability on the estate by his contracts.'" Succession of Huxen, 149 La. 61, 88 So. 687, 690 (1921); Succession of Worley, 40 La.Ann. 622, 4 So. 570 (1888); Carroll, Hoy & Co. v. Davidson, 23 La.Ann. 428 (1871).