702 So.2d 910 (1997)
SUCCESSION OF Clarence Joseph RIVERS, Plaintiff-Appellant,
William A. Rivers, Other Appellant,
Marvin Rivers, et al., Appellees.
No. 97-542.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
Writ Denied January 9, 1998.
*911 Allan Dale Smith, Ball, for William A. Rivers.
Richard E. Lee, Pineville, for Marvin Rivers et al.
Before YELVERTON, PETERS and PICKETT, JJ.
YELVERTON, Judge.
This appeal is from a judgment reforming a private sale of succession property to change the legal description from one acre to over twelve acres. The appellants are the succession and the substituted succession representative for the Succession of Clarence Rivers. We reverse and remand.

FACTS
Clarence Rivers died on October 29, 1981, leaving ten children. Three children were from an earlier marriage, and seven children were from his second and only other marriage. He died intestate so his ten heirs were each entitled to a one-tenth interest in his estate.
Clarence's succession was not opened until 1993. The succession petitioners were the seven children of the second marriage. Although the value of Clarence's half of the community property between him and his second wife, Irma, was only $7,500, and that was the entirety of his estate, the estate was not treated as a small succession. It was treated as a regular succession. Not only was this small succession treated as a regular succession, but the petitioning heirs (the seven children of the second marriage) even *912 asked for an administration. The necessity for an administration was allegedly for the payment of the debts of the succession, although the debts consisted only of attorney's fees and costs. A daughter of the second marriage, Peggy Herrington, was confirmed as administratrix on April 22, 1993, the same day that the succession was opened.
The court believes that the real reason for the administration of the succession was to enable a private sale of the succession property to one of the seven petitioning heirs. The immovable property of the succession consisted of one tract of land. It was valued at $15,000 on the sworn descriptive list. Clarence was owner of an undivided one-half of it. Marvin Rivers, one of the children of the second marriage, wanted to purchase the deceased's half of the immovable. It was part of the old family homesite. Marvin had already bought the undivided half-interest in the property belonging to his deceased mother, Irma, and he wanted the other half.
To accomplish that end, the administratrix petitioned the district court for a private sale to her brother, Marvin, for the price of $6,750, which was $7,500 less the value of Marvin's one-tenth interest, $750. The petition for authority to sell at private sale, the publications, and the judgment authorizing the sale were perfected in accordance with the requirements of La.Code Civ.P. art. 3281 et seq., dealing with the alienation of succession property by private sale. There being no opposition, the land was duly sold by the succession to Marvin Rivers.
The problem in this case that generated this lawsuit was an error in the description of the property. It was a big error, and it was not discovered until long after the judicial sale. As stated earlier, the succession propertywhat was left of the old home placeactually consisted of a half interest in 12.053 acres. However, the property described in the succession, including the sworn descriptive list, was a one acre tract cut out of the old home place. The description error was a consistent one. It appeared not only in the succession pleadings, but also in the petition for authority to sell, the advertisements, the judgment authorizing the sale, and the sale itself. According to the evidence at the hearing on the petition to reform the sale, the error was only as to the description. The price was correct, for the succession representative and Marvin did intend that the entire estate be conveyed by the private sale at that price.
Two years later William Rivers, who was one of the three children of Clarence's first marriage, petitioned for the removal of his half sister, Peggy, as administratrix. He succeeded in that petition and was himself appointed administrator of the succession. As administrator, William then filed a petition for collation describing various pieces of property that over the years had been carved out of the old home place and conveyed by donations in disguise by Clarence and Irma to most of their seven children. The seven children of Clarence and Irma answered that petition and denied the demand for collation. Marvin individually reconvened, and later was joined by his six siblings who filed an amending answer and reconventional demand praying that William Rivers, as administrator, be ordered to execute a correction deed conveying to Marvin "the remaining immovable property owned by the succession." This would have been a half interest in 11.053 acres.
The issue of reformation of the conveyance of succession property, as well as the collation questions, went to trial. The collation questions were for the most part stipulated, the donees agreeing to take less. Collation is not an issue on appeal.
On the reformation issue, the trial court found that Marvin proved by clear and convincing evidence that the parties to the transaction intended to convey a half interest in 11.053 more acres and that there had been a mutual mistake. A judgment was signed reforming the deed and ordering the administrator to convey to Marvin a half interest in the 11.053 acres. William, as the new administrator of the succession, appealed.

REFORMATION OF THE DEED
The new succession representative claims that the trial court erred in reforming the contract because it failed to take into account the prejudice resulting to third parties, *913 namely the heirs of the first marriage. William claims that the heirs were prejudiced because they relied upon the description and did not oppose the sale of one acre. When William testified at the trial of this cause, he testified that he opposed the reformation both individually and in his capacity as the succession representative.
We begin our analysis by repeating that William and his two siblings of the first marriage each had a one-tenth interest in the property belonging to the intestate succession of their father. This interest was apparent when the succession was opened and they were listed as heirs in the affidavit of death and heirship, although they were not petitioners. Alienation of the property by private sale without their consent required publication and advertisement of the sale. La.Code Civ.P. art. 3282.[1] The purpose of publication is to give notice of the proposed private sale of succession property to heirs, legatees, and creditors, in order to allow these interested parties to file oppositions to the proposed private sale. La.Code Civ.P. art. 3283. We make no comment as to whether they were entitled to additional notice as that has not been made an issue in the case. William and his two siblings were heirs and therefore included among those whose interests were minimally protected by the statutory requirement of publication.
On this appeal, Marvin, defending the trial court's judgment ordering a reformation, points to two cases in the jurisprudence which considered reformation of sales of succession property. Before we give our reasons for reversing the judgment ordering a reformation, we will discuss these two cases.
In Succession of Jones v. Jones, 486 So.2d 1124 (La.App. 2 Cir.), writ denied, 489 So.2d 249 (La.1986), the Succession of Jones was represented by its executor, Gulf National Bank of Lake Charles. Louise Jones was the surviving widow and owner of a one-half interest in the property described in the succession. From a reading of the opinion it is clear that the interests of the executor, the heirs of Jones, and Louise Jones were identical. The succession and Louise owned two adjacent tracts of land in north Louisiana. Following negotiations for the private sale of one tract, judicial approval was mistakenly obtained to sell both, and the actual sale described both tracts. Two of the three buyers sought to take a windfall advantage of the situation, saying they intended to buy two tracts and there was no error. (The buyers, confusingly, were also named Jones but they were unrelated to the succession Joneses.) There was never any question, according to the court, about the sellers' intent; only one tract was intended to be sold. The only question on appeal was whether the error was mutual, i.e., was there error on the part of the buyers at the time that they executed the act of sale? The court of appeal affirmed a finding that the evidence was clear and convincing that the three buyers likewise intended to buy only one tract, as evidenced by the admission of one of the buyers that that was their intent and as evidenced by other facts as well as the conduct of the other two buyers, which amounted to fraud. The court affirmed a judgment ordering reformation.
The difference between that case and our present case is the critical fact that in Succession of Jones all of the heirs were united; none were opposed to the terms of the intended sale. The ruling clearly does not support the claims of the appellees in the present case.
The other case was decided in the early part of this century after oil was discovered in DeSoto Parish. In Lattimer's Heirs v. Gulf Refining Co., 146 La. 249, 83 So. 543 (1919), the heirs of Lattimer sought to establish ownership of some acreage allegedly purchased by their ancestor but not described in the deed that took place almost fifty years earlier. Lattimer had purchased some property from another succession. The description in the succession sale did not include the disputed property. The heirs of Lattimer sought to reform the succession sale. The *914 supreme court would not permit a correction of the deed, explaining that "Lattimer bought only the lands that were advertised to be sold, that were appraised for the purpose of the sale, and that were actually sold as evidenced by the administrator's deed and his report to the court...." Lattimer's Heirs, 83 So. at 547. This decision likewise does not help the appellees in the present case.
Just as in Lattimer's Heirs, the reason why reformation is not available in the present case is because there was never any authorization or published notice to sell the succession half interest in the other 11.053 acres. There was authorization and notice to sell the succession half interest in only one acre. Peggy's agreement to sell more than that was never enforceable against the succession, because not having the authority of the court to sell more, she had no power to alienate more, and the power cannot be bestowed retroactively. Reformation is available to correct a mutual error or mistake by the parties in a contract. M.R. Bldg. Corp. v. Bayou Utilities, Inc., 25,759 (La.App. 2 Cir. 5/4/94); 637 So.2d 614. There was an error or mistake made in this sale as to Marvin, but not as to the seller, the Succession of Rivers; it was not mutual, because as to the seller the authorized sale was for a half interest in one acre, and that is what was sold. Peggy's personal intention is irrelevant. What she had the authority to sell as administratrix in 1993 is all that is relevant.
Undoubtedly, when she was the administratrix it was the intention of Peggy to sell, and it was the intention of Marvin to buy, the succession interest in the other 11.053 acres. As between those two persons there was a mutual mistake. But an administrator cannot create any liability on the estate by her contracts. Hamilton v. McKee, 371 So.2d 1115 (La.1979). For a valid sale of succession property to take place, there must be court authority and publication of notice. "Nowhere in the powers given to the succession representative, in alienating the property of the succession, is there a suggestion that the representative has the power to obligate the succession to alienate its property without first obtaining that authority from the court." Id. at 1119. Not only does the administratrix lack that power, without prior consent of the court, but also a subsequently obtained authorization to sell does not make enforceable the previously unauthorized, unenforceable agreement to sell. Id. Ratification was not in the succession representative's power: "Only the heirs, the owners, could ratify her unauthorized agreement, if it can be called that, to sell the land of another [meaning the land of the estate]." Id. at 1119.
The administratrix in this case never got court approval to sell the succession's interest in 12.053 acres. She got approval to sell its interest in one acre. Hamilton held that a contract to buy and sell succession property, without court approval, is a relative nullity. A relatively null contract is one which violates a rule intended for the protection of private parties. La.Civ.Code art. 2031. It can be confirmed; the heirs/owners of the succession property have the power to ratify the succession representative's unauthorized agreement. Hessick v. Petro Publications, Inc., 96-0034 (La.App. 1 Cir. 11/8/96); 684 So.2d 466, writ denied, 97-0332 (La.3/21/97); 691 So.2d 89. If the heirs/owners elect not to ratify the agreement, they may treat it as a nullity. In the present case the three dissenting heirs have chosen not to ratify Peggy's unauthorized agreement. Because there was never advertised authority to sell the succession's interest in the remaining acres of the total 12.053 acres, the three heirs were never put on notice and allowed the opportunity to oppose such a sale. They may treat Peggy's unauthorized agreement as a nullity as to that remaining acreage, 11.053 acres.
If all of the heirs/owners of the succession property had ever agreed to the sale to Marvin, there would now be no need for a ratification. If they had all agreed to the sale, there would have been no need for an administration or for a judicially approved private sale. The other heirs could have simply conveyed their undivided interests to Marvin by a conventional act of sale. Lacking the approval of the children of the first marriage, the children of the second marriage resorted to an administration and a *915 judicially approved private sale in order to get the property into Marvin's hands. Their misfortune was that their first attorney never properly identified and described the succession property. For two years after the succession was opened, it was officially and consistently considered as an estate consisting of an undivided half of one acre. Even when it was closed with an inarticulately drawn judgment of possession that sent seven of the ten heirs into possession, there was still no mention of an additional 11.053 acres.[2] Not until this litigation commenced seeking a reformation of the judicially authorized sale did the 11.053 acres make its belated appearance.
We hold that reformation is unavailable to Marvin because the agreement of the administratrix to sell him a half interest in 12.053 acres was never authorized and never became enforceable. A reformation would allow a result to be accomplished indirectly which the Louisiana Code of Civil Procedure and the jurisprudence plainly state cannot be accomplished directly. The judgment reforming the sale is vacated and set aside.
Our reversal does not mean that Marvin may not recover for an inequitable purchase price. Other rules of law may come into play to prevent that possible injustice. As to this, or any possible further rights and duties of the parties, however, we express no opinion. Our holding is limited to the finding that the sale may not be reformed to make it a sale of more than a half interest in one acre.
We reverse the judgment of the trial court insofar as it reforms the sale. Costs of this appeal will be paid by the appellees. We remand the succession for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Had the case been handled as a small succession under La.Code Civ.P. art. 3421, then notice would have had to be published only once. La. Code Civ.P. art. 3443. The original administratrix elected to follow the more cumbersome and expensive procedure of a large succession. La. Code Civ.P. art. 3282, requiring two publications.
[2] The Judgment of Possession erroneously recognized the seven heirs as the "children and sole heirs" of Clarence Rivers, then placed them in possession collectively of an "undivided one-tenth (1/10) interest of an undivided one-half interest in the remaining property...." No property was described in the judgment. The other documents in the succession record, which has not been reopened for any corrections, still recite that the only property of the succession is one acre.